IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARTHA J. JONES                                                PLAINTIFF

V.                              NO. 13-5177

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Martha J. Jones, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI), under the provisions of Titles II and XVI of the

Social Security Act (Act). In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. <u>See</u>

42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her current applications for DIB and SSI on June 30, 2010, alleging an

inability to work since April 10, 2009, due to a broken knee, fibromyalgia, dyslexia, and

depression. (Tr. 146-147, 167, 179).  An administrative hearing was held on June 6, 2012, at

which Plaintiff appeared with counsel testified. (Tr. 28-54).

By written decision dated July 24, 2012, the ALJ found that Plaintiff had an impairment

or combination of impairments that were severe - status post left ankle fracture, remote left

patellar fracture, fibromyalgia, and anxiety disorder, NOS. (Tr. 16). However, after reviewing

all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or

equal the level of severity of any impairment listed in the Listing of Impairments found in

Appendix I, Subpart P, Regulation No. 4. (Tr. 17). With the help of the vocational expert (VE),

the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there

were other jobs Plaintiff could perform, such as touch up screens working with circuit boards,

and mounter of small parts. (Tr. 21-23).

    Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on June 25, 2013. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc.

1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both

parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 15).

    The Court has reviewed the entire transcript. The complete set of facts and arguments are

presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

    This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnard, 314 F.

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence

exists in the record that would have supported a contrary outcome, or because the Court would

AO72A
(Rev. 8/82)

have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42

(8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ erred at Step Two in failing to find Plaintiff's Raynaud's Syndrome a severe impairment and in failing to perform the Special Technique as to Plaintiff's mental impairment at Steps Two and Three; and 2) The ALJ erred in his RFC determination which was not supported by evidence, and in his reliance upon the VE testimony which conflicted with the RFC determination. (Doc. 13).

**A.     Step 2 and Step 3 Analysis:**

Plaintiff argues that the ALJ erred at Steps Two and Three in his severity analysis by failing to perform an adequate Special Technique, and by failing to find that Plaintiff's Raynaud's Disease was severe.

The Court will first address whether Plaintiff's Raynaud's Disease was severe. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

In this case, the relevant medical records indicate that on February 18, 2010, Dr. Mark A. Bonner, Plaintiff's treating physician, assessed Plaintiff with hypertension, stable, Raynaud's Phenomena, stable, and anxiety state unspecified - sub-optimal control. (Tr. 274).  On August

-4-

5, 2010, non-examining consultant, Dr. Denise Greenwood, completed a Physical RFC Assessment and found no manipulative limitations to be present. (Tr. 328).  On March 7, 2011, Dr. Bonner reported that Plaintiff's hypertension was stable and her Raynaud's Disease was stable. (Tr. 303).

On June 8, 2011, non-examining consultant, Dr. Jim Takach, completed a Physical RFC Assessment, and reported that no manipulative limitations were established. (Tr. 439).  On March 22, 2012, APN Julia A. Blanchard, from Dr. Bonner's office, assessed Plaintiff with Raynaud's Disease, chronic, and noted that Plaintiff was to refer to rheumatology if pain worsened or failed to improve with fibromyalgia. (Tr. 464). On March 22, 2012, Dr. Bonner completed a medical opinion regarding Plaintiff's ability to do work-related activities (physical), and opined that Plaintiff should avoid even moderate exposure to extreme cold. (Tr. 453).  In a March 22, 2012 Fibromyalgia Medical Source Statement, Dr. Bonner reported that Plaintiff had pain in her hands and fingers, and that Plaintiff had 60% ability in her right and left hand for grasping, turning and twisting objects, and 60-80% in her fingers for fine manipulations. (Tr. 456-457).

At the hearing held on June 6, 2012, Plaintiff testified that she had Raynaud's Disease, but that her feet bothered her more than her hands. (Tr. 37). She also testified that she had the syndrome for "as long as I can remember. It's gotten worse." (Tr. 38). She testified that she dropped cups, plates, and bowls.(Tr. 39).  However, Plaintiff also testified that she did cross stitching and embroidery. (Tr. 47).

It is significant that Plaintiff did not allege Raynaud's Disease to be one of her disabling conditions when she applied for disability.  See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.

-5-

AO72A
(Rev. 8/82)

2001)(failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed).  In addition, in Dr. Bonner's Medical Opinion Re: Ability to do Work-Related Activities (Physical), dated March 22, 2012, he indicated that reaching, fingering, pushing/pulling, handling, and feeling were not affected by the impairment. (Tr. 453).

Based upon the foregoing, the Court finds there is substantial evidence to support the finding that Plaintiff's Raynaud's Disease was non-severe.

Next, Plaintiff argues that the ALJ failed to perform an adequate listing evaluation of any of Plaintiff's mental impairments. The Court finds Plaintiff's argument on this issue to be without merit. A Psychiatric Review Technique (PRT) is required in evaluating mental impairments at steps two and three of the sequential evaluation process. See 20 C.F.R. §§ 404.1520a(a), 416.920a(the agency rates the degree of limitation as none, mild, moderate, marked and extreme in the four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation).  In the present case, the ALJ found Plaintiff had the severe impairment of anxiety disorder, NOS. (Tr. 16). The ALJ also found that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of listing 12.06. (Tr. 17).  The ALJ further concluded that the "paragraph B" criteria were satisfied, and found that in activities of daily living, Plaintiff had mild restriction; in social functioning, Plaintiff had mild difficulties; in concentration, persistence or pace, Plaintiff had moderate difficulties; and Plaintiff experienced no episodes of decompensation, which had been of extended duration. (Tr. 17).  In his decision, the ALJ  gave significant weight to the opinion of Dr. Efird, who reported in his evaluation, dated  August 25, 2010, that Plaintiff endorsed the ability to perform basic self-care tasks independently, and that the ability to perform household

chores adequately was described as impaired to some extent by physical problems. (Tr. 335). Dr. Efird noted that Plaintiff drove to the evaluation and that her mood was generally normal to a bit anxious. (Tr. 335). Dr. Efird concluded that Plaintiff communicated and interacted in a reasonably socially adequate manner and in a reasonably intelligible and effective manner; had the capacity to perform basis cognitive tasks required for basic work like activities, and no remarkable indications of cognitive inefficiency were noted during the evaluation; no remarkable problems with attention/concentration were noted, although she did struggle some on the task of serial threes; no remarkable problems with persistence were noted during the evaluation; and no remarkable problems with mental pace of performance were noted. (Tr. 337).  As the ALJ considered and credited Dr. Efird's assessment of Plaintiff's limitations, there was a sufficient basis for his conclusions that Plaintiff had mild restriction in activities of daily living and in social functioning, and moderate difficulties in concentration, persistence or pace, and that Plaintiff experienced no episodes of decompensation, which had been of extended duration.

Plaintiff also argues the ALJ did not mention Plaintiff's depression. However, in his evaluation, Dr. Efird concluded that Plaintiff's mood and affect were not clearly consistent with a severe degree of anxiety or depression at that time. (Tr. 336). In addition, on March 7, 2011, Dr. Bonner reported Plaintiff was anxious but not depressed. (Tr. 303). In a March 22, 2012 report by Julia A. Blanchard, APN, Ms. Blanchard reported that Plaintiff's depression was stable and that Celexa was working well for Plaintiff without side effects. (Tr. 463).  Dr. Bonner also reported that same date that Celexa was working well for Plaintiff's depression. (Tr. 444).

Based upon the foregoing, as well as those reasons given in Defendant's well-reasoned brief, the Court finds there is substantial evidence to support the ALJ's Step 2 and Step 3

AO72A
(Rev. 8/82)

Analysis.

**B.     RFC Determination:**

Plaintiff argues that the ALJ erroneously omitted environmental limitations, manipulative limitations, the need to elevate upper extremities, and a sit/stand option.  Plaintiff also argues that the ALJ improperly discredited Dr. Bonner's opinions.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

As a result of an ankle fracture Plaintiff suffered in November of 2010, Dr. Marcus J. Heim performed an open reduction and internal fixation, Weber B fracture, left distal fibula. (Tr. 379).  In a follow-up appointment with Dr. Heim on January 9, 2011, Dr. Heim reported that Plaintiff's radiographs looked fine and her ankle motion was excellent. (Tr. 475). He encouraged her to wean off the crutches completely. (Tr. 475).

-8-

Knee and ankle x-rays were taken on May 26, 2011, at St. Johns Hospital in Berryville, and the knee x-rays revealed a normal right knee and the ankle x-ray revealed a negative study. (Tr. 427).

In Dr. Jim Takach's Physical RFC Assessment dated June 8, 2011, Dr. Takach found Plaintiff retained the ability to function at sedentary work, with certain limitations, including avoiding moderate exposure to extreme cold and concentrated exposure to hazards (machinery, heights, etc.) (Tr. 438-440).

On May 26, 2011, Dr. Joseph M. Ricciardi, of Orthopaedic & Sports Medicine Clinic of Northwest Arkansas, examined Plaintiff for the purpose of disability determination. (Tr. 469). Dr. Ricciardi found there was a full range of motion in both knees, there was no dorsiflexion of the ankle beyond the neutral position in the right ankle and a 10 degree deficit of dorsiflexion to the neutral position in the left ankle with further flexion to 85 degrees. Plaintiff plantar flexed 70 degrees in the right ankle. (Tr. 470).  Dr. Ricciardi further found muscle strength in dorsiflexion/plantar flexion and inversion/eversion in both ankles were 5/5 using a 0-5 scale. (Tr. 470). Plaintiff's motion was not limited by rigidity, pain, or spasticity, and there was a well healed distal lateral fibular scar in the left ankle. (Tr. 470). Dr. Ricciardi reported that Plaintiff walked with a cane and was unsteady without her cane, and that bending and squatting were associated with favoring of the left lower extremity, and Plaintiff used the support of the exam table to get up on it. (Tr. 470).  The knee film showed no fracture or deformity and there was no soft tissue swelling, widening of the ankle, or other significant changes seen. He believed that the whole person impairments of 6% was appropriate. (Tr. 470).

On March 22, 2012, Dr. Bonner completed four different disability forms: Mental

AO72A
(Rev. 8/82)

Impairment Questionnaire; Listing § 1.02A - Major Dysfunction of a Weight Bearing Joint; Medical Opinion Re: Ability to Do Work-Related Activities (physical); and Fibromyalgia Medical Source Statement. (Tr. 444-449, 450-451, 452-453, 454-457).   With respect to the Mental Impairment Questionnaire, it is noteworthy that Dr. Bonner is not a mental health specialist. In his Listing § 1.02A form, Dr. Bonner referenced Plaintiff's left knee post patella fracture and limited mobility. (Tr. 450). He noted that Plaintiff did not have any limitation of motion of the affected joint. (Tr. 450). He also reported Plaintiff could not climb stairs at a reasonable pace, needed an assistive device to ambulate, had severe pain, stiffness, and poor balance and a full range of motion with pain was noted. (Tr. 451). In his medical opinion regarding Plaintiff's ability to do work-related activities, he found that Plaintiff had certain limitations and should avoid all exposure to fumes, odors, dusts, gases, perfumes, etc. and moderate exposure to extreme cold, that a cane was needed, and she needed to elevate her legs. (Tr. 453).   In his Fibromyalgia Medical Source Statement, Dr. Bonner reported Plaintiff had many severe limitations. (Tr. 456-457).

The ALJ gave Dr. Ricciardi's opinion significant weight, as it was generally consistent with other evidence of record. (Tr. 19). With respect to Plaintiff's mental health condition, the ALJ gave Dr. Efird's opinion significant weight. (Tr. 20). With respect to Dr. Bonner's opinion, the ALJ gave his opinion little weight. (Tr. 20). In doing so, the ALJ set forth reasons for giving Dr. Bonner's opinion little weight. Referring to Dr. Bonners' fibromyalgia medical source statement, the ALJ reported:

> Dr. Bonner's records indicate very little discussion of fibromyalgia over the years, primarily consisting of discussion during the years 2006 and 2007, years which the claimant worked with significant earnings.

> Furthermore, the opinion is not otherwise consistent with other evidence of record.

(Tr. 20).   With respect to Dr. Bonner's mental impairment questionnaire, the ALJ reported:

> Dr. Bonner reported that the claimant's depression made her fibromyalgia worse, but acknowledged that the depression was well managed with Celexa and that the claimant's prognosis was good. He indicated that her symptoms included decreased energy, mood disturbance, difficulty thinking or concentrating, distractibiliy, and emotion isolation. Dr. Bonner reported that the claimant had moderate difficulties in maintaining concentration, persistence and pace, but reported that her depression, associated symptoms and or treatment would never cause her to be absent from work. This opinion is also given little weight as the more disabling aspects of the opinion generally refer to fibromyalgia as the main problem, and it is otherwise not consistent with other evidence of record.

(Tr. 20).  With respect to Dr. Boner's medical opinion regarding Plaintiff's ability to do work related physical activities, the ALJ reported:

> Dr. Bonner reported that the claimant was limited in sitting, standing and walking. He relayed that she could lift and carry ten pounds occasionally and less than ten pounds frequently. Dr. Bonner asserted that the claimant could frequently crouch, climb stairs and ladders but could [sic] asserted that she could only occasionally twist, stoop and bend, due to severe pain and instability with activities. He relayed that the claimant needed a cane, needed to elevate her legs and contended that she had limitations in kneeling and crawling. Again, this opinion is given little weight as it notes fibromyalgia as primary problem, yet there is little to no support for this allegation in Dr. Bonner's records. Furthermore, the impairments are significantly out of proportion to other evidence of record.

(Tr. 20-21).  The ALJ gave the state agency physician's opinion regarding Plaintiff's physical impairments significant weight and the state agency physician's opinion regarding Plaintiff's mental impairments little weight.[1] (Tr. 21).

---

[1]On August 28, 2010, non-examining consultant Abesie Kelly, Ph.D., completed a Case Analysis, opining that Plaintiff's mental impairment was non-severe. (Tr. 343). This was affirmed on April 19, 2011 by Dr. Jay Rankin. (Tr. 423).

-11-

"'[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" <u>Whitman v. Colvin</u>, No. 13-2215, 2014 WL 3896131 at *4 (8th Cir., Aug. 7, 2014)(quoting <u>Goff v. Barnhart</u>, 421 F.3d 785, 789 (8th Cir. 2005).  However, "'even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where the evidence as a whole supports either outcome.'" <u>Whitman</u>, 2014 WL 3896131 at *5, (quoting <u>Baldwin v. Barnhart</u>, 349 F.3d 549, 555 (8th Cir. 2003).  The ALJ may reject or discount all of part of a treating physician's opinion if it is unsupported by medical findings, inconsistent with other substantial medical evidence in the record, or inconsistent with the physician's own findings. <u>See</u> <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218-19 (8th Cir. 2001).  The evidence here supports the ALJ's decision, even if some evidence, such as Dr. Bonner's opinions, may support the opposite conclusion.  In addition, the Court believes the ALJ properly articulated his reasons for giving little weight to Dr. Bonner's opinion.

With respect to the lack of manipulative limitations and additional limitations related to Raynaud's Disease, the Court is of the opinion that the ALJ properly found Plaintiff's Raynaud's was a non-severe impairment, and therefore, the ALJ properly did not include any limitations related to this condition.

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby

-12-

affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 21st day of August, 2014.

/s/ Erin L. Setter

HONORABLE ERIN L. SETTER
UNITED STATES MAGISTRATE JUDGE

-13-